145　23
s175　198

# H. S. HEILMAN ET AL. v. LEBANON ETC. RY. CO.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF LEBANON COUNTY.

Argued October 21, 1891*—Decided January 4, 1892.

An order of the court below dissolving a preliminary injunction, awarded on a bill filed by landowners to restrain an electric railway company from constructing and operating its railway over plaintiffs' lands in a township and within the appropriation of an incorporated turnpike company, until compensation should be paid or secured, affirmed.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

---

*By advancement, in the Western District.

Opinion of Court below.

No. 18 January Term 1892, Sup. Ct.; court below, No. 9 Equity D. 1891, C. P.

On July 30, 1891, Henry S. Heilman, John H. Snavely and Reilly R. Snavely filed a bill in equity praying upon the facts averred, shown in the opinion of the court below, for an injunction to restrain the Lebanon & Annville Street-Railway Company from constructing and operating its railway over the land of the plaintiffs within the appropriation of the Berks & Dauphin Turnpike company, without first paying or securing to be paid to the plaintiffs compensation for the land taken and injured, etc.

A motion to continue a preliminary injunction awarded on the filing of the bill having been argued upon affidavits read, the court, SIMONTON, P. J., filed the following opinion:

The bill states that the plaintiffs are the owners and occupiers of a tract of land in North Cornwall township, Lebanon county, through and over a portion of which the roadbed of the Berks & Dauphin Turnpike road is located, and that they are the owners of the fee in the land occupied by said turnpike; that the Lebanon & Annville Street-Railway Company, defendant, incorporated under the act of May 14, 1889, P. L. 211, claim authority under said act to construct and operate a street railway on and over the bed of said turnpike road, including the part thereof on and over plaintiffs' land, and that said company are about to lay their tracks thereon, without having first paid or secured to be paid just compensation to plaintiffs; that by reason of the construction and operation of said railway, the access to and use of plaintiffs' adjoining land will be obstructed and rendered dangerous, and plaintiffs will suffer great and irreparable damage and injury thereby; that said act of May 14, 1889, "is unconstitutional and void, for the reason that no provision is made therein for just compensation for property taken, injured or destroyed, by companies organized and operating thereunder, by such taking, injuring or destroying, as required by § 8, article XVI., of the constitution of Pennsylvania;" that said company has not paid or offered to pay compensation for such construction and operation; and that plaintiffs have never consented to the entry of said com-

Opinion of Court below.

pany upon said lands; and the court is asked, by a preliminary injunction and hereafter by permanent injunction, to restrain the defendant from entering upon said premises and constructing and operating a railway thereon, or to restrain the defendant from so doing without first making and paying compensation to the plaintiffs for such entering, taking and injuring.

Affidavits have been filed in support of and in opposition to the motion to continue the preliminary injunction, from which we find that plaintiffs are the owners in fee, to the middle of said turnpike, of the land referred to in the bill, and that defendants intend to construct and operate a street railway by means of electricity on and over said turnpike, and have located the same on the side thereof within about seven feet of the line of plaintiffs' property, and adjoining the turnpike upon that part the fee of which is vested in them; that defendants intend to construct said railway on the level of the grade of the street, and do not intend to erect embankments on or opposite to plaintiffs' property. Other facts will appear from the affidavits, which we do not consider necessary to mention in detail here.

The first question raised by the bill and affidavits, and the request for an injunction, is whether the act of May 14, 1889, under which defendants claim to locate and operate the railway in question, is unconstitutional. The ground upon which it is claimed so to be, is that it makes no provision for paying or securing compensation to private persons for taking, injuring or destroying their property, in the construction and operation of the railways authorized by the act to be constructed.

It cannot be doubted that this act confers no right upon a street-railway company to construct a railway on or over private property, other than that of the roadbed belonging to a turnpike company, or part of the track of an existing railway company, for the purpose of making connections. But the reason of this is, not that the act is unconstitutional, but that it gives no authority to take private property excepting as above, and that, therefore, this cannot be done. In other words, the act is constitutional so far as it applies; but, as the legislature have failed to provide in it for the taking of private property, and for ascertaining and making compensation therefor, the railway companies have no right, under the act, to take such property, and consequently have no right to construct and

operate a railway on and over such property. Where the location of their road does not involve the taking of private property, the act applies, and where it does apply it is constitutional. [If, then, defendant's road can be located and constructed on the roadbed of the turnpike in question, where it passes through the land of plaintiffs, without taking, injuring or destroying plaintiffs' property, it has a right to construct it under the provisions of this act.] [2]

This brings us to the next question in the case, which is, whether the construction and operation of a street railway, to be operated by means of electricity, imposes an additional servitude upon the fee which is vested in plaintiffs, to the roadbed which was originally taken for the purpose of a turnpike road, for which use, it must be presumed, plaintiffs, or those under whom they claim, were compensated.

In Lockhart v. Railway Co., 139 Pa. 419, the court below, dissolving a preliminary injunction by a decree which was affirmed by the Supreme Court, said: "It cannot be doubted, at this day, that the legislature of Pennsylvania has the power to authorize the incorporation of companies with power to build and operate railways with horses over the streets of cities, with the authority and consent of the authorities of said cities, as provided by § 9, article XVII. of the constitution. And it is too late to say that such use and occupation of the streets imposes such an additional burden or servitude thereon, as renders it necessary to provide for compensation therefor to the owners of abutting property." In that case, it was further held that the same principle would apply to a street railway operated by electricity, by means of iron posts, eighteen feet high, permanently fixed at the side of the street, with an overhead wire in the centre of the street.

There are many cases to the same effect in other states, except as to the manner of the operation of the road by means of electricity. Among others is Elliott v. Railway Co., 32 Conn. 579; Hobart v. Railroad Co., 27 Wis. 194 (9 Am. Rep. 461); and Covington Ry. Co. v. Railroad Co., quoted in 5 Am. & Eng. R. Cas. 286, in which it is said that "in states in which the construction of steam railroads through streets is held to be a new servitude for which abutters are entitled to compensation, as for land taken for public use, it is almost uniformly

held that no such right exists because of the occupation of streets by street railways. The reason is that the operation of street railways is a legitimate use of the streets, and an exercise of the public right to travel upon them." The same view is held in Citizens' Coach Co. v. Railroad Co., 33 N. J. Eq. 267 (36 Am. Rep. 542); Hinchman v. Railroad Co., 2 C. E. Green 75 (86 Am. Dec. 252); Attorney General v. Railroad, 125 Mass. 515.

While there have not been any other Pennsylvania cases cited which expressly so rule, yet it is well known that the universal practice in this state has been to construct and operate railways upon the streets in cities, without the payment of compensation to the owners of the abutting lots. And, as said by the court below in Lockhart v. Railway Co., already quoted, it is certainly "too late to say that such use and occupation of the streets imposes such an additional burden or servitude thereon, as renders it necessary to provide for compensation to the owners of abutting property."

Defendant's railway, however, is about to be constructed outside of and adjacent to the limits of the city of Lebanon; and plaintiffs' counsel contends that as to rural highways this rule is different, and in support of this position has cited Sterling's App., 111 Pa. 35, where it was held that the laying of a pipe for the purpose of supplying natural gas under the soil of a rural highway, imposed an additional servitude upon the fee vested in the abutting owner, for which he was entitled to compensation. We do not think, however, that the principle upon which that case was decided applies here. The laying of a gas pipe under the soil of the street could not, in any sense, be considered a use of the surface of the street for the purpose of travel, but was in effect taking part of the soil under the street for a new use, and for this reason the owner was held to be entitled to compensation therefor. But, as was said in one of the cases above cited, "the operation of street railways is a legitimate use of the streets, and an exercise of the public right to travel upon them;" and it would seem that this must be the case, whether it be upon a street within the limits of a city, or upon a turnpike road without but adjacent to the city limits. [In the absence of direct authority, none having been cited nor found by us, holding that the construction of a street railway

Arguments.

to be operated by electricity on the roadbed of a turnpike company contiguous to the city limits, imposes an additional servitude for which an owner of the fee is entitled to compensation, we are not prepared to hold that the question is one so free from doubt as to warrant us, at least before final hearing, in granting an injunction.] [1]

We are not able to find from the affidavits that defendants intend to construct any embankment in front of the property of plaintiffs abutting upon said turnpike road, which would obstruct the access to such property, or inflict any damage upon it other than what might result from the legal construction and operation of the railway; and we cannot, therefore, continue the injunction for this reason. We have carefully examined and considered all the cases cited by plaintiffs' counsel, as well as a number of others, but have found nothing in them which leads us to a different conclusion.

We adopt as applicable here what was said in Lockhart v. Railway Co., already cited: " The case presented by plaintiffs is certainly not so clear from doubt that a chancellor should grant an injunction, summarily stopping a great public improvement, before final hearing; more particularly if the position taken by plaintiffs is correct and defendants have no legal right to take possession of the streets as they are about to do. [A common-law action will compel them to pay all damages arising to plaintiffs, and thereafter equity would probably afford a complete remedy by which the wrong done them could be fully corrected." ] [4]

The motion to continue the preliminary injunction is overruled and the injunction is dissolved.[5]

—Thereupon the plaintiffs took this appeal, specifying that the court erred:

1, 2. In the portions of the opinion embraced in [ ] [1] [2]

3. In holding that § 15, act of May 14, 1889, P. L. 217, is constitutional, so far as the same relates to securing the consent of the local authorities of a township, to the construction and operation of a street railway within its limits.

4. In the portion of the opinion embraced in [ ] [4]

5. In dissolving the preliminary injunction.[5]

*Mr. Bassler Boyer*, for the appellants.

Opinion of the Court.

Counsel cited: (1) Sterling's App., 111 Pa. 35; Mumma v. Railroad Co., 1 Pears. 24; Mifflin v. Railroad Co., 16 Pa. 182; Jessup v. Loucks, 55 Pa. 351; § 1, act of June 11, 1879, P. L. 126; Phillips v. Railroad Co., 78 Pa. 177; Union Tp. v. Gibboney, 94 Pa. 534. (2) Section 8, article XVI. of the constitution; Erie etc. R. Co. v. Casey, 26 Pa. 287, 307; Commonwealth v. Railroad Co., 58 Pa. 26; Commonwealth v. Gardner, 23 Pa. 417. (3) Curwensville Bor.'s App., 129 Pa. 78; Unangst's App., 55 Pa. 128. (4) Pittsb. etc. R. Co. v. Commonwealth, 104 Pa. 583.

*Mr. C. H. Killinger* (with him.*Mr. S. P. Light*), for the appellee.

Counsel cited: Lockhart v. Railway Co., 139 Pa. 419; 6 Am. & Eng. Encyc. of Law, 555; Dillon on Mun. Corp., § 722; Pittsb. etc. R. Co. v. Commonwealth, 104 Pa. 583; Northern C. Ry. Co. v. Commonwealth, 90 Pa. 300; Elliott v. Railway Co., 32 Conn. 579; Faust v. Railway Co., 3 Phila. 164; Hinchman v. Railway Co., 2 C. E. Greene 75 (86 Am. Dec. 252); Citizens' Coach Co. v. Railway Co., 33 N. J. Eq. 267 (36 Am. Rep. 542); Attorney General v. Railroad, 125 Mass. 515; Briggs v. Railway Co., 79 Me. 363; Jersey City Ry. Co. v. Railway Co., 20 N. J. Eq. 75; State v. Railway Co., 85 Mo. 276; Peddicord v. Railway Co., 34 Md. 463; Covington Ry. Co. v. Railroad Co., 19 Am. L. Reg. 765; Newell v. Railway Co., 35 Minn. 112 (59 Am. Rep. 303); Frankford Ry. Co. v. Philadelphia, 58 Pa. 125; Millvale Bor. v. Railway Co., 131 Pa. 1; Easton Ry. Co. v. Easton, 133 Pa. 505; Cincinnati Ry. Co. v. Cumminsville, 14 Ohio 523.

PER CURIAM:

Without intimating any opinion as to the merits of this case, we think it should proceed to final hearing, in order that the facts may be more fully developed. It appears to present a question, which, in some of its aspects at least, may be regarded as a new one.

Order affirmed and appeal dismissed.